**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| MARVEL-SCHEBLER AIRCRAFT CARBURETORS LLC, a North Carolina Limited Liability Company,<br><br>Plaintiff and Counter Defendant,<br><br>v.<br><br>AVCO CORPORATION, a Delaware Corporation,<br><br>Defendant and Counter Plaintiff. | ) | 1:10CV745 |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the undersigned United States Magistrate Judge for a recommendation on Defendant/Counterplaintiff's Rules 12(b)(1) and 12(b)(6) Partial Motion to Dismiss (Docket Entry 45). For the reasons that follow, Defendant's Motion should be granted in part and denied in part.

Background

The Second Amended Complaint ("SAC") identifies Plaintiff Marvel-Schebler Aircraft Carburetors LLC ("MSA") as a North Carolina aircraft carburetor manufacturer (Docket Entry 42, ¶¶ 1, 7) and Defendant AVCO Corporation ("AVCO") as a Delaware corporation (id. ¶ 2) that "manufactures, markets, promotes, and sells aircraft engines" (id. ¶ 15). MSA brought this suit against

AVCO for trademark infringement and various related state law claims. (Id. ¶¶ 38-66; Docket Entry 51 at 2.)

MSA identifies itself as "the exclusive manufacturer of Marvel-Schebler® aircraft carburetors" (Docket Entry 42, ¶ 7) and alleges that it and its "predecessors-in-interest have manufactured and marketed Marvel-Schebler® Carburetors worldwide continuously and for decades under certain trademark model numbers ["the Trademarks"]" (id. ¶ 9). Further, MSA asserts that, "pursuant to the directives of AVCO, AVStar [Fuel Systems, Inc.] began manufacturing, marketing, and selling aircraft carburetors bearing the Trademarks in the second half of 2008." (Id. ¶ 12.) According to MSA, "Defendant AVCO manufactures, markets, promotes, and sells aircraft engines in interstate commerce that include AVStar carburetors bearing the Trademarks, thereby further interjecting AVStar's infringing goods into the stream of commerce and increasing the confusion amongst consumers and damage to MSA." (Id. ¶ 15.)

In addition, MSA alleges that AVCO possesses "proprietary top-level drawings of Marvel-Schebler® Carburetors" given to AVCO by MSA's predecessors-in-interest (id. ¶ 17) and, despite the fact that "MSA acquired all rights and interests in and to the proprietary drawings and information" (id. ¶ 18) and subsequently "requested [AVCO] return all of its proprietary top-level drawings

and other information" (id. ¶ 19), AVCO "has yet to return" said materials (id.). MSA claims AVCO has "converted for its own use, and falsely made claims of ownership to," the materials. (Id. ¶ 20.)

In 2008, MSA entered into a Direct Ship Authority contract with Aero Accessories, Inc. ("Aero") whereby Aero would manufacture carburetors bearing the Trademarks under its FAA Parts Manufacturer Approval ("PMA"). (Id. ¶ 21.) MSA alleges that, after the filing of this suit, AVCO threatened representatives of MSA and Aero regarding the trademark infringement issue (id. ¶ 22) and then attempted to influence the FAA to revoke Aero's manufacturing approval and to disrupt the relationship between Aero and MSA (id. ¶¶ 23-25). MSA asserts that "AVCO's threats to MSA and Aero were made to harass and intimidate MSA and to interfere with the Direct Ship Authority contract arrangement between Aero and MSA." (Id. ¶ 22.) Moreover, according to MSA, AVCO's contact with the FAA "constitute[d] unfair competition and tortious interference with MSA's existing and prospective contracts and business opportunities." (Id. ¶ 24.)

MSA further alleges that AVCO made other false representations to the FAA in an "effort to prevent MSA from obtaining PMA for a number of its Marvel-Schebler® Carburetor models sold under various Trademarks." (Id. ¶ 25.) It contends that AVCO's "actions have

caused MSA to incur substantial additional costs during the process of procuring PMA for various Marvel-Schebler® Carburetors." (Id.)

Based on the foregoing allegations, the SAC asserts the following claims in this Court: (1) "Federal Unfair Competition (15 USC § 1125(a))" (id. ¶¶ 38-40); (2) "False Designation of Origin (15 USC § 1125(a))" (id. ¶¶ 41-43); (3) "False Description (15 USC § 1125(a))" (id. ¶¶ 44-46); (4) "Common Law Unfair Competition" (id. ¶¶ 47-49); (5) "Common Law Injury to Business Reputation" (id. ¶¶ 50-53); (6) "Conversion" (id. ¶¶ 54-55); (7) "Tortious Interference with Contract" (id. ¶¶ 56-59); (8) "Tortious Interference with Prospective Economic Advantage" (id. ¶¶ 60-63); (9) "Unfair or Deceptive Trade Practices (NC Gen. Stat. 75-1.1)" (id. ¶¶ 64-66); (10) "Profits; Damages and Costs; Attorney Fees (15 USC § 1117)" (id. ¶¶ 67-68); and (11) "Permanent Injunctive Relief (15 USC § 1116)" (id. ¶¶ 69-70).[1] AVCO moves to dismiss Claims Five through Eight pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject-matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief may be granted). (Docket Entry 46 at 1.)

[1] The initial Complaint alleged federal claims of unfair competition and false description pursuant to 15 U.S.C. § 1125(a), and dilution under 15 U.S.C. § 1125(c), as well as state law claims for unfair competition and injury to business reputation. (Docket Entry 1, ¶¶ 27-49.)

Existence of Subject Matter Jurisdiction

Because subject matter jurisdiction constitutes a threshold question, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998), the Court should address that issue first. United States District Courts exercise two primary types of subject matter jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331 and diversity of citizenship jurisdiction under 28 U.S.C. § 1332. Where federal courts "have original jurisdiction of [] civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, they may also preside over state law claims in conjunction with the federal law claims if said state law claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[,]" 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1332, "a federal district court has original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states." Central W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011) (citing 28 U.S.C. § 1332(a)(1)). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the

proceedings to one for summary judgment." Evans v. B.F. Perkins, Co., 166 F.3d 642, 647 (4th Cir. 1999).

AVCO argues that "there is nothing in the SAC that even remotely supports the allegation that the entirety of [MSA's] state law claims exceed the sum of $75,000." (Docket Entry 46 at 16 (emphasis added).) MSA responds that it "alleges in good faith that the amount in controversy in the case exceeds $75,000" (Docket Entry 51 at 18) and that "[t]here is . . . no basis to conclude to a legal certainty that any or all of MSA's claims fall short of these jurisdictional requirements" (id. at 19).

As an initial matter, the United States Court of Appeals for the Fourth Circuit has recognized that "even if it is determined . . . that to a legal certainty [a plaintiff's state law] claim[s] [are] really for less than [the diversity dollar requirement], [the plaintiff] may attempt to meet Section 1332(a)'s [monetary] jurisdictional requirement by adding to his diversity claim[s] . . . the amount of the recovery he is seeking under [his federal claims]." Hales v. Winn-Dixie Stores, Inc., 500 F.2d 836, 846 (4th Cir. 1974) (internal quotation marks and footnote omitted); see also id. at 849 (Widener, J., dissenting) (observing that "the majority would permit a plaintiff to aggregate his state and federal claims in order to meet the [monetary] jurisdictional requirement under 28 U.S.C. § 1332(a)"). In the instant case, AVCO

does not contend that the aggregate of all the claims falls short of $75,000 – rather, it focuses only on the aggregate of the state law claims. (See Docket Entry 46 at 16.) Because AVCO makes no argument as to the insufficiency of the aggregate sum of all claims, its challenge to diversity jurisdiction fails.

Further, "[c]ourts generally determine the amount in controversy by reference to the plaintiff's complaint." JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010) (citing Wiggins v. N. Am. Equitable Life Assurance Co., 644 F.2d 1014, 1016 (4th Cir. 1981) ("Ordinarily the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith.")). If the complaint claims a sufficient sum to satisfy the jurisdictional requirement, a defendant "seeking dismissal of diversity actions for lack of a sufficient amount in controversy . . . must show 'the legal impossibility of recovery' to be 'so certain as virtually to negative the plaintiff's good faith in asserting the claim.'" Id. (quoting Wiggins, 644 F.2d at 1014). The SAC alleges that "[t]he matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs" (Docket Entry 42, ¶ 4), although without identifying, as to each claim, the specific amount of damages to which MSA claims entitlement (id. ¶¶ 40, 43, 46, 49, 53, 59, 63, 66 (asserting MSA has suffered injury and damages "in an amount not

yet determined")). A complaint "sufficiently establishes diversity jurisdiction if it alleges that the parties are of diverse citizenship and that the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332 . . . ." Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 200 (4th Cir. 2008) (citing Fed. R. Civ. P. 84, Fed. R. Civ. P. app. Form 7) (internal quotation marks omitted). The SAC, therefore, "claims a sum sufficient to satisfy the statutory requirement." JTH Tax, Inc., 624 F.3d at 638. AVCO has not shown "'the legal impossibility of recovery,'" id. (quoting Wiggins, 644 F.2s at 1014), of the requisite amount. As a result, MSA's SAC supports diversity jurisdiction.[2]

Failure to State a Claim

AVCO next argues that MSA's counts five through eight fail to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 46 at 6-7.) A litigant fails to state a claim when the litigant's pleading lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted) (quoting Bell Atlantic Corp. v. Twombly, 550

[2] In light of this conclusion, the Court need not inquire as to whether the state law and federal claims "form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), such that the Court would have supplemental jurisdiction over the state law claims.

U.S. 544, 570 (2007)).[3] This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

*Claim Five: Common Law Injury to Business Reputation*

AVCO alleges that MSA's common law claim for injury to business reputation "must be dismissed because it is not a cause of action recognized under North Carolina law." (Docket Entry 46 at 7.) MSA did not respond to this allegation. (See Docket Entry 51.) For the reasons detailed in Kinetic Concepts, Inc. v. ConvaTec, Inc., No. 1:08CV918, 2010 WL 1667285, at *6-8 & nn. 12, 13 (M.D.N.C. Apr. 23, 2010) (unpublished), MSA's failure to respond to AVCO's argument on this point constitutes a concession that generally warrants granting AVCO's requested relief under this Court's Local Rule 7.3(k).

---

[3] Although the Court looks to North Carolina law when analyzing Plaintiff's state law claims, "pleading standards are a matter of procedural law governed in this Court by federal, not state, law." McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 920 (M.D.N.C. 2011) (Beaty, C.J.) (citing Jackson v. Mecklenburg Cnty., N.C., No. 3:07-cv-218, 2008 WL 2982468, at *2 (W.D.N.C. July 30, 2008)).

After due consideration, the undersigned finds no reason to depart from that general rule in this case because, under North Carolina law, damage to business reputation represents only a form of injury. See, e.g., Carson v. Brodin, 160 N.C. App. 366, 371, 585 S.E.2d 491, 495 (2003); Fran's Pecans, Inc. v. Greene, 134 N.C. App. 110, 113, 516 S.E.2d 647, 650 (1999). The undersigned Magistrate Judge found no North Carolina cases supporting the contention that injury to business reputation constitutes an independent cause of action. In such circumstances, "'[a]bsent a strong contervailing federal interest, the federal court . . . should not . . . render what may be an uncertain and ephemeral interpretation of state law.'" Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (quoting Mitcheson v. Harris, 955 F.2d 235, 238 (4th Cir. 1992)). ACVO's Motion to Dismiss as to Claim Five should therefore be granted.

*Claim Six: Conversion*

AVCO puts forth two arguments against MSA's conversion claim: first that "there is no cause of action under North Carolina law for 'conversion' of intangible rights in intellectual property," and second that "[AVCO] is required under federal law to maintain in its records the items which [MSA] claims were converted." (Docket Entry 46 at 8.) As to the first assertion, AVCO argues

that the conversion claim is “based on the ‘aforesaid acts’ (*see* [Docket Entry 42,] ¶ 55), which necessarily include allegations that [AVCO] unlawfully used MSA’s purported trademarks.” (Id. at 9.) MSA responds that its SAC “properly alleges a claim for conversion . . . of MSA’s proprietary documents and information - which clearly support a conversion claim - and not merely for ‘intangible rights in intellectual property’ as AVCO suggests.” (Docket Entry 51 at 6.)

MSA’s SAC contains an allegation of conversion of “any proprietary information including its drawings . . .” (Docket Entry 42, ¶ 55). The SAC asserts that “MSA has requested [AVCO] return all of its proprietary top-level drawings and other information, including Marvel-Schebler® Carburetor design information and any other proprietary information related to the Marvel-Schebler® Carburetor product line owned by MSA. [AVCO has] yet to return any proprietary drawings or information belonging to MSA.” (Id. ¶ 19.) These factual assertions support an inference that MSA’s conversion claim involves more than merely AVCO’s use of “intangibles” like MSA’s Trademarks.

As to its second argument, AVCO claims that federal law requires it to maintain possession of the drawings and other information MSA alleges AVCO unlawfully converted. (See Docket Entry 46 at 9-10.) AVCO contends that “[t]he information in the

drawings presumably consists of design information related to carburetors incorporated into [AVCO] engines that [AVCO] is authorized by the FAA to sell to the general public." (Id. at 9.) However, the SAC asserts that "MSA acquired all rights and interests in and to the proprietary drawings and information regarding Marvel-Schebler® Carburetors when it purchased the Marvel-Schebler® Carburetor business . . . ." (Docket Entry 42, ¶ 18.) It further alleges that AVCO only acquired the drawings and information because MSA's predecessors-in-interest supplied AVCO with them "solely for [AVCO's] use in identifying for purchase genuine Marvel-Schebler Carburetors from MSA and/or its predecessors-in-interest." (Id. ¶ 17.) AVCO's argument to the contrary is not relevant at this stage as the Court must assume the facts alleged in the SAC are true, see Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). The Court therefore should allow MSA's conversion claim to go forward.

*Claims Seven and Eight: Tortious Interference with Contract and Prospective Economic Advantage*

AVCO next asserts that MSA's seventh and eighth claims (for tortious interference of contract and tortious interference with prospective economic advantage, respectively) "fail[] to plead the necessary common law elements . . . ." (Docket Entry 46 at 10.) In this regard, AVCO argues that MSA's claim for tortious interference with contract fails because MSA "neither alleges that

a third party failed to perform a contract nor identifies any actual damages." (Id.) MSA responds that it "unquestionably alleges a legally cognizable claim for tortious interference with contract. AVCO tortiously interfered with, and sought to induce Aero not to perform, Aero's Direct Ship Authority Contracts with MSA, both through direct threats to Aero and false and fraudulent communications to the FAA designed to harm Aero and MSA." (Docket Entry 51 at 8-9 (citing Docket Entry 42, ¶¶ 22, 24).) MSA further argues that it "is neither required to show a breach of contract by Aero nor obligated to enumerate the specific damages resulting from AVCO's unlawful interference in order to properly plead its tortious interference claim." (Id. at 9.)

To succeed on a tortious interference with contract claim under North Carolina law,

> a plaintiff must show that: (1) there was a valid contract between the plaintiff and a third person that conferred a contractual right to the plaintiff against the third person; (2) the defendant knew of the contract; (3) the defendant intentionally induced the third person not to perform the contract; (4) in doing so, acted without justification; and (5) caused actual damage to the plaintiff.

English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc., No. 97-2397, 172 F.3d 862 (table), 1999 WL 89125, at *5 (4th Cir. Feb. 23, 1999) (unpublished) (internal footnotes omitted) (citing United Labs., Inc. v. Kuykendall, 322 N.C. 643, 370 S.E.2d 375, 387 (1988)). MSA correctly observes that, to satisfy the third element, "the third

person need not actually breach the contract." Id. at *5 n.12 (citing Lexington Homes, Inc. v. W.E. Tyson Builders, Inc., 75 N.C. App. 404, 411, 331 S.E.2d 318, 322 (1985)). The SAC alleges that AVCO "intentionally and without justification interfered with MSA's relationship with Aero by making threats to Aero personnel and engaging the FAA in an attempt to revoke Aero's PMA status for carburetors manufactured by MSA." (Docket Entry 42, ¶ 57.) It further states that AVCO's representative, Mr. Kraft, "made verbal threats to representatives of MSA and Aero" in an attempt "to harass and intimidate MSA and to interfere with the Direct Ship Authority contract arrangement between Aero and MSA" (id. ¶ 22) and that AVCO contacted the FAA "in a fraudulent effort to persuade the FAA to revoke Aero's PMA status for carburetors manufactured by MSA" (id. ¶ 24). These assertions sufficiently allege the third element of a tortious interference with contract claim under North Carolina law.

The SAC does not, however, set forth factual allegations of actual damages as a result of AVCO's interference. A plaintiff is not "required to specify how it arrived at its measure of damages" alleged, Elina Adoption Servs., Inc. v. Carolina Adoption Servs., Inc., NO. 1:07CV169, 2008 WL 4005738, at *8 (M.D.N.C. Aug. 25, 2008) (unpublished) (Beaty, C.J.), but "[a] defendant is entitled to know from the complaint the character of the injury for which he

must answer," Thacker v. Ward, 263 N.C. 594, 599, 140 S.E.2d 23, 28 (1965). Although MSA's SAC contains a boilerplate assertion of damages in Claim Seven (id. ¶ 59 ("MSA has suffered and will continue to suffer irreparable injury and damages, in an amount not yet determined, for which MSA is entitled to relief.")), it provides no factual assertions to support the claim. MSA does not contend that any part of its contractual relationship with Aero was actually affected by the alleged threats or FAA correspondence from AVCO. (See id. ¶¶ 22-25, 56-59.) Claim Seven should therefore be dismissed.

With respect to MSA's claim for tortious interference with prospective economic advantage, AVCO asserts that MSA "failed to even allege or identify a single potential contract that [AVCO] intentionally destroyed or allege any specific damages resulting from the alleged interference." (Docket Entry 46 at 11-12.) MSA responds that its "pleading sufficiently alleges tortious interference with MSA's prospective advantages and specifically describes the damages MSA has sustained and will sustain as a result." (Docket Entry 51 at 12.)

Under North Carolina law,

> unlawful interference with the freedom of contract is actionable, whether it consists in maliciously procuring breach of a contract, or in preventing the making of a contract when this is done, not in the legitimate exercise of defendant's own right, but with the design to

injure the plaintiff, or gaining some advantage at his expense.

Owens v. Pepsi Cola Bottling Co. of Hickory, N.C., Inc., 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992) (quoting Coleman v. Whisnant, 225 N.C. 494, 506, 35 S.E.2d 647, 656 (1945)). In order to state a claim for tortious interference with prospective economic advantage under North Carolina law, a complaint must "allege facts which show that the defendant acted without justification in 'inducing a third party to refrain from entering into a contract with [the plaintiff] which contract would have ensued but for the interference.'" Kehrer v. Fields, No. 5:11-CV-260-FL, 2011 WL 6965714, at *9 (E.D.N.C. Nov. 21, 2011) (unpublished) (quoting Walker v. Sloan, 137 N.C. App. 387, 393, 529 S.E.2d 236, 242 (2000)). The plaintiff must also "assert some measurable damages resulting from defendant['s] allegedly tortious activities, i.e., what 'economic advantage' was lost to plaintiff[] as a consequence of defendant['s] conduct." Walker, 137 N.C. App. at 394.

MSA appears to put forth two theories of tortious interference with prospective advantage. First, it asserts that AVCO's interference prevented MSA from obtaining the PMA it sought from the FAA "without the unnecessary delay and expense AVCO caused." (Docket Entry 51 at 13 (citing Docket Entry 42, ¶ 25).) Second, it claims "AVCO's unlawful acts interfered with MSA's business and its relationships with current and prospective customers." (Id.)

The first theory necessarily fails because MSA concedes that it did in fact receive the PMA from the FAA. (Id.) In order to support a theory of tortious interference with economic advantage, a plaintiff must show the defendant "induc[ed] a third party to refrain from entering into a contract with [the plaintiff] which contract would have ensued but for the interference." Walker, 137 N.C. App. at 393. Nothing in North Carolina case law suggests a claim for tortious interference with economic advantage can be sustained on the basis of a mere delay.

MSA's second theory fails because the SAC does not allege more than a "mere expectation of future contracts with [potential customers] . . . ." McElmurry v. Alex Fergusson, Inc., No. 1:04CV389, 2006 WL 572330, at *17 (M.D.N.C. Mar. 8, 2006) (unpublished) (Dixon, M.J.) (citing DaimlerChrysler Corp. v. Kirkhart, 148 N.C. App. 572, 585, 561 S.E.2d 276, 286 (2002)). MSA identifies neither potential contracts nor potential customers it lost due to AVCO's actions, but instead simply asserts that AVCO's actions "have caused and will continue to cause damage to MSA's business reputation, damage to MSA's ability to conduct business, and/or damage to MSA's relationship with current and/or prospective customers." (Docket Entry 42, ¶ 25.) "It is unclear from this averment precisely what damages [P]laintiffs contend they have suffered. [The North Carolina] Supreme Court has stated that '[a]

defendant is entitled to know from the complaint the character of the injury for which he must answer.'"  Walker, 137 N.C. App. at 394 (quoting Thacker, 263 N.C. at 599)).  Because MSA has failed to sufficiently plead interference or damages, the Court should dismiss MSA's claim for tortious interference with economic advantage.

## Conclusion

Although this Court has subject matter jurisdiction over MSA's state law claims, Claims Five, Seven, and Eight do not meet the standard to survive a Rule 12(b)(6) motion to dismiss.

**IT IS THEREFORE RECOMMENDED** that AVCO's Partial Motion to Dismiss (Docket Entry 46) be granted as to Claims Five, Seven, and Eight.

**IT IS FURTHER RECOMMENDED** that AVCO's Partial Motion to Dismiss be denied as to Claim Six.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 22, 2012